IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BIO-MEDICAL APPLICATIONS OF AQUADILLA, INC., and 233 additional entities owned by, controlled by, and/or affiliated with Fresenius Medical Care Holdings, Inc., as set forth on Addenda A, B and C of the Complaint, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14-187C |
| v. | ) ) | Judge Bush |
| The United States, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## **DEFENDANT'S MOTION TO DISMISS**

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

Of Counsel
Dennis Foley
Drew Cornacchio
Office Of General Counsel (025)
Department of Veterans Affairs

JOHN S. GROAT
Trial Attorney
PHYLLIS JO BAUNACH
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 616-8260
Fax:  (202) 514-7965
jack.groat@usdoj.gov

May 5, 2014

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

QUESTIONS PRESENTED .........................................................................1

STATEMENT OF FACTS .........................................................................2

PERTINENT STATUTORY AND REGULATORY PROVISIONS............................................3

SUMMARY OF ARGUMENT .........................................................................4

ARGUMENT .........................................................................6

    I.     Rules 12(b)(1) And 12(b)(6) ................................................6

    II.    A Comprehensive Statutory And Regulatory Scheme Governs The VA's Purchases Of Non-VA Medical Services ForVeterans............................................8

    III.    The Appropriations Clause Requires Specific Congressional Authorization For Any Disbursements From The Treasury Based On Plaintiffs' Theory That 38 C.F.R. § 17.56 (2009) Mandates Compensation .......................................9

    IV.    Plaintiffs Cannot Meet Their Burden To Establish That 38 C.F.R. § 17.56 (2009) Constitutes A Money Mandating Provision Independent Of The VA's Contractual Authority ..........................................11

        A.    Congress Did Not Authorize The VA To Issue 38 C.F.R. § 17.56 (2009) As A Money-Mandating Provision .................................14

        B.    The VA Never Intended That The Provisions of 38 C.F.R. § 17.56 (2009) Reverse The VA's Longstanding Policy And Mandated Compensation ..........................................14

        C.    The VA In Issuing 38 C.F.R. § 17.56 (2005) Logically Did Not Comply With 41 U.S.C. § 418(b)(2005)..................................19

        D.    Plaintiffs' Interpretation Of 38 C.F.R. § 17.56 (2005) As A Non-contractual, Money-Mandating Provision Authorizing The VA To Acquire Non-VA Medical Services By The Issuance Of Individual Authorizations Not Subject To Federal Procurement Statutes And Regulations Conflicts With 41 U.S.C. § 3101 ..........................................22

# TABLE OF CONTENTS
-continued-

PAGE

IV.    The Court Should Dismiss All The Dialysis Centers' Claims For Services
Provided To Veterans Not Eligible Services In Accordance With 38 U.S.C.
§ 1703 and 38 C.F.R.§ 17.52 (2009) ...................................................................23

V.    In The Absence of Plaintiffs' Submission Of Claims To The VA As
Required By The CDA, The Court Lacks Jurisdiction to Entertain
Plaintiffs' Claims ...............................................................................................24

    A.    The VA's Acquisition Of Dialysis Services In Accordance With 38
U.S.C. §§ 1703 and 8153, The FAR, And VAAR By The Issuance
Of Purchase Orders Results In Contracts...................................................24

    B.    The FAR Provisions That Specifically Provided That Acceptance
Of Agencies' Purchase Orders By Performance Results In
Unilateral Contracts .................................................................................29

    C.    A Comprehensive Statutory And Regulatory Scheme Governs All
Disputes Arising From The VA's Acquisition Of Non-VA Medical
Services For Veterans ...............................................................................32

    D.    The CDA By Its Express Terms Withdraws Any Waiver of
Sovereign Immunity Pursuant To 1491(a)(1) ............................................35

    E.    The CDA By Implication Withdraws Any Waiver of Sovereign
Immunity Pursuant To 28 U.S.C. § 1491(a)(1) .........................................36

VI.    The Court Should Dismiss All The Dialysis Centers' Claims That Seek
More Than $10,000.............................................................................................37

CONCLUSION.....................................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                     **PAGE(S)**

*Alaniz v. OPM,*
   728 F.2d 1460 (Fed. Cir. 1984) ................................................................... 22

*Andrus v. Glover Constr. Co.,*
   446 U.S. 608 (1980) ................................................................................... 8

*Andrus v. Sierra Club,*
   442 U.S. 347 (1979) ................................................................................... 10

*Anselma Crossing, L.P. v. U.S. Postal Service,*
   637 F.3d 238 (3d Cir. 2011) ....................................................................... 28

*Applied Cos. v. United States,*
   144 F.3d 1470 (Fed. Cir. 1998) ................................................................. 32

*Auer v. Robbins,*
   519 U.S. 452 (1997) ................................................................................... 13

*Bel Pre Health Care Ctr., Inc. v. United States,*
   24 Cl. Ct. 495 (1991) ................................................................................. 30

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................... 7

*Brodowy v. United States,*
   482 F.3d 1370 (Fed. Cir. 2007) ................................................................. 13

*Brown v. General Servs. Admin.,*
   425 U.S. 820 (1976) ................................................................................... 36

*Brownlee v. DynCorp,,*
   349 F.3d 1343 (Fed. Cir. 2003) ................................................................. 24

*Cambridge v. United States,*
   558 F.3d 1331 (Fed. Cir. 2009) ................................................................. 7

*Canal 66 P'ship v. United States,*
   87 Fed. Cl. 722 (2009) .......................................................................... 30, 31

*Casa de Cambio Comdiv S.A. de C.V. v. United States,*
   291 F.3d 1356 (Fed. Cir. 2002) ................................................................. 7

**TABLE OF AUTHORITIES**
-continued-

CASES                                                                    PAGE(S)

*Cedars-Sinai Med. Ctr. v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993) ......................................................................... 7

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ................................................................................. 12, 13

*Cincinnati Soap Co. v. United States*,
  301 U.S. 308 (1937) ....................................................................................... 10

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*,
  467 U.S. 837 (1984) ................................................................................. 24, 34

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ....................................................................................... 24

*Crowley v. United States*,
  398 F.3d 1329 (Fed. Cir. 2005) ..................................................................... 13

*DaVita, Inc. v. United States*,
  110 Fed. Cl. 71 (2013) .................................................................................... 5

*Dixon v. United States*,
  381 U.S. 68 (1965) ......................................................................................... 34

*Edmond v. United States*,
  520 U.S. 651 (1997) ....................................................................................... 14

*Erlenbaugh v. United States*,
  409 U.S. 239 (1972) ....................................................................................... 33

*Essex Electro Eng'rs, Inc. v. United States*,
  960 F.2d 1576 (Fed. Cir. 1992) ..................................................................... 39

*Fed. Crop Ins. Corp. v. Merrill*,
  332 U.S. 380 (1947) ................................................................................. 12, 38

*Friedman Enterprises, Inc.*,
  ASBCA No. 54886, 05-2 BCA ¶ 32,991 ....................................................... 29

*Goodrich v. United States*,
  434 F.3d 1329 (Fed. Cir. 2006) ..................................................................... 7

iv

# TABLE OF AUTHORITIES
## -continued-

**CASES**                                                           **PAGE(S)**

*Greenlee Cnty. v. United States*,
   487 F.3d 871 (Fed. Cir. 2007) ........................................................................... 7

*H.L. Smith, Inc. v. Dalton*,
   49 F.3d 1563 (Fed. Cir. 1995) ......................................................................... 34

*Hamlet v. United States*,
   63 F.3d 1097 (Fed. Cir. 1995) ................................................................... 12, 13

*Harbert/Lummus Agrifuels Projects v. United States*,
   142 F.3d 1429 (Fed. Cir. 1998) ....................................................................... 12

*Horne v. Dep't of Agric.*,
   133 S. Ct. 2053 (2013) ..................................................................................... 36

*Iacono v. Office of Pers. Mgmt.*,
   974 F.2d 1326 (Fed. Cir. 1992) ....................................................................... 11

*INS v. St. Cyr*,
   533 U.S. 289 (2001) ........................................................................................... 6

*James M. Ellett Constr. Co. v. United States*,
   93 F.3d 1537 (Fed. Cir. 1996) ......................................................................... 35

*Jan's Helicopter Serv. v. Fed. Aviation Admin.*,
   525 F.3d 1299 (Fed. Cir. 2008) ......................................................................... 7

*Klass Eng'g, Inc.*,
   ASBCA No. 22052, 78-2 BCA ¶ 13,236 ......................................................... 31

*La Gloria Oil and Gas Co. v. United States*,
   56 Fed. Cl. 211 (2003) ..................................................................................... 21

*M. Maro-pakis Carpentry Inc. v. United States*,
   609 F.3d 1323 (Fed. Cir. 2010) ................................................................... 6, 35

*Manhattan Gen. Equip. Co. v. Comm'r of,IRS*,
297 U.S. 129 (1936) ........................................................................................... 34

*Master Research & Mfg.*,
   ASBCA No. 46341, 94-2 BCA ¶ 26747 ..................................................... 30, 31

# TABLE OF AUTHORITIES
### -continued-

**CASES**                                                                  **PAGE(S)**

*McDonnell Douglas Corp. v. United States*,
  754 F.2d 365 (Fed. Cir. 1985)........................................................................ 32

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
  298 U.S. 178 (1936)...................................................................................... 7

*Military Order of the Purple Heart v. Sec'y of Veterans Affairs*,
  580 F.3d 1293 (Fed. Cir. 2009)............................................................... 21, 22

*Miller v. United States*,
  No. 90 C 1766, 1990 WL 179810 (N.D. Ill. Nov. 5, 1990)........................... 31

*Navajo Refining Co., L.P., v. United States*,
  58 Fed. Cl. 200 (2003) ................................................................................. 21

*Newport News Shipbuilding & Dry Dock Co. v. Garrett*,
  6 F.3d 1547 (Fed. Cir. 1993)........................................................................ 31

*OPM v. Richmond*,
  496 U.S. 414 (1990)...................................................................................... 10

*Reeside v. Walker*,
  52 U.S. 272 (1850)........................................................................................ 10

*Reflectone v. Dalton*,
  60 F.3d 1572 (Fed. Cir. 1995)................................................................. 34, 35

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ..................................................................................... 33

*Reynolds v. Army & Air Force Exch. Serv.*,
  846 F.2d 746 (Fed. Cir. 1988)........................................................................ 6

*Roberts v. United States*,
  745 F.3d 1158 (Fed. Cir. 2014)...................................................................... 7

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
  490 U.S. 477 (1989)...................................................................................... 13

# TABLE OF AUTHORITIES
## -continued-

CASES                                                                                    PAGE(S)

*Sharp Elecs. Corp. v. McHugh*,
  707 F.3d 1367 (Fed. Cir. 2013)....................................................................... 31, 32

*Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States*,
  672 F.3d 1021 (Fed. Cir. 2012)........................................................................... 7

*Todd Constr., L.P. v. United States*,
  656 F.3d 1306 (Fed. Cir. 2011)....................................................................... 32, 37

*Trauma Serv. Gp. v. United States*,
  104 F.3d 1321 (Fed. Cir. 1997)........................................................................... 12

*U.S. Marine, Inc. v. United States*,
  722 F.3d 1360 (Fed. Cir. 2013)........................................................................... 6

*United States v. Amdahl Corp.*,
  786 F.2d 387 (Fed. Cir. 1986)........................................................................... 22

*United States v. Bormes*,
  133 S. Ct. 12 (2012)..................................................................................... 21, 36

*United States v. Erika, Inc.*,
  456 U.S. 201 (1982)..................................................................................... 36, 37

*United States v. Mason*,
  412 U.S. 391 (1973)......................................................................................... 13

*United States v. Navajo Nation*,
  556 U.S. 287 (2009)......................................................................................... 6

*United States v. Nordic Vill., Inc.*,
  503 U.S. 30 (1992)........................................................................................... 6

*United States v. Stewart*,
  311 U.S. 60 (1940)........................................................................................... 38

*United States v. Testan*,
  424 U.S. 392 (1976)......................................................................................... 6

# TABLE OF AUTHORITIES
### -continued-

**CASES**                                                                PAGE(S)

*Utah Power & Light Co. v. United States,*
  243 U.S. 389 (1917) ................................................................................. 38

*Wesleyan Co. v. Harvey,*
  454 F.3d 1375 (Fed. Cir. 2006) ............................................................... 5

*Yosemite Park & Curry Co. v. United States,*
  582 F.2d 552 (Ct. Cl. 1978) ..................................................................... 13


**FEDERAL STATUTES**

5 U.S.C. § 553 ........................................................................................... 13

28 U.S.C. § 1491 ................................................................................. 36, 37

31 U.S.C. § 5136 ....................................................................................... 28

38 U.S.C. § 213 (1985) ............................................................................. 25

38 U.S.C. § 513 ......................................................................................... 25

38 U.S.C. § 720 ......................................................................................... 28

38 U.S.C. § 1703 (2009) .................................................................... *passim*

38 U.S.C. § 8123 ....................................................................................... 28

38 U.S.C. § 8153 (2009) .................................................................... *passim*

39 U.S.C. § 410 ......................................................................................... 28

41 U.S.C. § 252 (2010) ............................................................................... 8

41 U.S.C. § 418 (2005) ................................................................... 19, 20, 21

41 U.S.C. § 1121 ....................................................................................... 24

## TABLE OF AUTHORITIES
### -continued-

**CASES**                                                    **PAGE(S)**

41 U.S.C. § 1707.................................................................................................. 20, 21

41 U.S.C. § 3101.................................................................................................... 8, 22

41 U.S.C. § 3102.................................................................................................... 8, 9

41 U.S.C. § 7101......................................................................................................... 2

41 U.S.C. § 7102....................................................................................................... 32

41 U.S.C. § 7103................................................................................................... 35, 36

44 U.S.C. § 1507....................................................................................................... 38

49 U.S.C. § 40110..................................................................................................... 28

**FEDERAL REGULATIONS**

38 C.F.R. § 15.52 -17.52..............................................................................................3

38 C.F.R. § 17.52 (2009) ..................................................................................... *passim*

38 C.F.R. § 17.56 (2009) ..................................................................................... *passim*

41 C.F.R. § 1-1.208 (1965) ......................................................................................... 9

41 C.F.R. § 1-1.208 (1978) ....................................................................................... 32

41 C.F.R. § 801.670-3 (2009).................................................................................... 38

42 C.F.R. § 413.171 & 310........................................................................................ 18

# TABLE OF AUTHORITIES
## -continued-

**CASES**                                                  **PAGE(S)**

42 C.F.R. Parts 414 and 415 ........................................................................ 15

48 C.F.R. § 1.301 ........................................................................................ 25

48 C.F.R. § 2.101 (1985) ............................................................................. 30

48 C.F.R. § 2.101 ........................................................................................ 26

48 C.F.R. § 13.302-5 ................................................................................... 25

48 C.F.R. § 801.101 ............................................................................... *passim*

48 C.F.R. § 801.670 ..................................................................................... 30

48 C.F.R. § 813.307 ..................................................................................... 34

48 C.F.R. § 853.213 ..................................................................................... 19

## CONSTITUTIONAL PROVISIONS

U.S. Const., art. I, § 9, cl. 7 ........................................................................... 1

## RULES

RCFC 12(b) ..................................................................................................... 1

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 45(1) ....................................................... 5

Restatement (Second) of Contracts § 45(1) (1981) ......................................... 30

## INDEX TO ADDENDUM

**Document**                                                                 **Page**

U.S. Const. Art. 1 § 9 Cl. 7 .................................................................................. 1

38 U.S.C. § 8153 ................................................................................................. 4

41 U.S.C. § 418b (2005) ..................................................................................... 7

41 U.S.C. § 3101 ................................................................................................. 9

41 U.S.C. § 3104 ............................................................................................... 12

41 U.S.C. § 3106 ............................................................................................... 13

Pub. L. No. 104-262 (Oct. 9, 1996) ................................................................. 15

Pub. L. No. 108-170 (Dec. 6, 2003) ................................................................. 22

S. Rep. No. 104-372 (Sept. 26, 1996) .............................................................. 26

S. Rep. No. 108-193 (Nov. 10, 2003) ............................................................... 46

38 C.F.R. § 17.56 (1999) .................................................................................. 53

38 C.F.R. § 17.56 (2005) .................................................................................. 55

38 C.F.R. § 17.56 (2009) .................................................................................. 57

41 C.F.R. § 1-1.208 (1965) ............................................................................... 59

42 C.F.R. § 413.171 .......................................................................................... 60

42 C.F.R. § 413.310 .......................................................................................... 61

42 C.F.R. § 2.101 (1985) .................................................................................. 63

42 C.F.R. § 2.101 .............................................................................................. 66

48 C.F.R. § 13.004 ............................................................................................ 90

48 C.F.R. § 13.302-5 ......................................................................................... 92

48 C.F.R. § 801.101 .......................................................................................... 93

## INDEX TO ADDENDUM

**Document**                                                                     **Page**

48 C.F.R. § 801.670-3 (2009) ............................................................................. 94

48 C.F.R. § 801.670-3 ....................................................................................... 96

48 C.F.R. § 801.695 ........................................................................................... 98

48 C.F.R. § 853.213 ......................................................................................... 120

62 Fed. Reg. 39,197 (July 22, 1997) ............................................................... 121

63 Fed. Reg. 39,514-01 (July 23, 1998) .......................................................... 124

69 Fed. Reg. 44,507-01 (July 28, 2003) .......................................................... 126

70 Fed. Reg. 5,923-01 (Feb. 4, 2005) ............................................................. 129

VA Manual M1, 15.37 (Dec. 9, 1982) ............................................................. 131

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BIO-MEDICAL APPLICATIONS OF | ) | |
| AQUADILLA, INC., and 233 additional | ) | |
| entities owned by, controlled by, and/or | ) | |
| affiliated with Fresenius Medical Care | ) | |
| Holdings, Inc., as set forth on Addenda | ) | |
| A, B and C of the Complaint, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 14-187C |
| | ) | Judge Bush |
| v. | ) | |
| | ) | |
| The United States | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to RCFC 12(b), defendant, the United States, respectfully moves the Court to dismiss plaintiffs' complaint (Compl.), Dkt. 1, for lack of jurisdiction and, in the alternative, for failure to state a claim on which relief can be granted.  In support of this motion, we rely on the complaint, and the following brief with an addendum (A—), concurrently filed as an attachment.

## DEFENDANT'S BRIEF

## QUESTIONS PRESENTED

1.  Whether plaintiffs can meet their burden under the Appropriations Clause, U.S. Const., art. I, § 9, cl. 7, and under the test adopted in *Hamlet v. United States*, 63 F.3d 1097, 1105 (Fed. Cir. 1995) (manual provision which contravened statute not money-mandating), and applied in *Brodowy v. United States*, 482 F.3d 1370, 1375 (Fed. Cir. 2007) (manual provisions which met four part test constituted a money-mandating

provision), to establish that 38 C.F.R. § 17.56 (2009) (subsequently amended), constitutes a money mandating provision.

2.   Whether plaintiffs can meet their burden to demonstrate that 38 C.F.R. § 17.56 (2009), which specifically addressed the Department of Veterans Affairs' (VA's) payment for services "authorized under § 17.52," applies to services that plaintiffs provided to veterans not eligible for services under section 38 C.F.R. § 17.52 (2009), and therefore are "not authorized under § 17.52."

3.   Whether the plaintiffs' acceptance by performance of individual authorizations for medical services issued by the VA pursuant to a limited delegation of procurement authority in 48 C.F.R. § 801.670-3 (2009) resulted in contracts subject to the requirement of the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–7109, that plaintiffs submit all their claims to a VA contracting officer prior to filing suit.

4.   Whether plaintiffs can meet their burden to demonstrate that individual authorizations for medical services issued pursuant to the VA Secretary's limited delegation of procurement authority, 48 C.F.R. § 801.670-3, which authorizations are expressly limited to the acquisition of "services under $10,000 per authorization," entitle plaintiffs to recovery of more than $10,000 for each individual authorization.

## STATEMENT OF FACTS

Bio-Medical Applications of Aquadilla, Inc., and 233 other named plaintiffs (collectively, "Fresenius Plaintiffs"),  contend that  38 C.F.R. § 17.56 (2009) entitles them to additional compensation for dialysis services that they provided to veterans during the period of January 1, 2009, through February 15, 2011, pursuant to VA

individual authorizations.  Complaint, ¶ 15. ("38 C.F.R. § 17.56 mandates the payment of money that is the subject of this action.").

## PERTINENT STATUTORY AND REGULATORY PROVISIONS

In pertinent part, 38 U.S.C. §1703 (2009) (subsequently amended), "Contracts for hospital care and medical services in non-Department facilities," provided that "the [VA] Secretary . . .  may contract with non-Department facilities in order to furnish" specified care for specified veterans.  Implementing section 1703, 38 C.F.R. § 17.52 (2009) provided its pertinent part that the "VA may contract with non-VA facilities for care . . . . When demand is only for infrequent use, individual authorizations may be used" for specified veterans and specified conditions, as specifically set forth in subparagraphs 15.52(a)(1)–17.52(a)(11).

Provisions of 17.56 "Payment for non-VA physician and other health care professional services" provided in pertinent part, as follows:

> [P]ayment for non-VA health care professional services associated with outpatient and inpatient care provided at non-VA facilities authorized under § 17.52 . . . shall be the lesser of the amount billed or the amount calculated using the formula developed by the Centers for Medicare and Medicaid Services' (CMS) participating physician fee schedule for the period in which the service is provided . . . .  If no amount has been calculated under Center for Medicare and Medicaid Services' participating physician fee schedule or if the services constitute anesthesia services, payment for such non-VA health care professional services associated with outpatient and inpatient care provided at non-VA facilities authorized under § 17.52, or made under § 17.120 of this part, shall be the lesser of the actual amount billed or the amount calculated using the 75th percentile methodology set forth in paragraph (c) of this section or the usual and customary rate if there are

3

> fewer than 8 treatment occurrences for a procedure during
> the previous fiscal year.

38 C.F.R. § 17.56 (2009).

Provisions of 38 U.S.C. § 8153 (2009) provided, in pertinent part, as follows:

> the [VA] Secretary may . . . make arrangements, by
> contract or other form of agreement, for the mutual use, or
> exchange of use, of health-care resources between
> Department health-care facilities and any health-care
> provider, or other entity or individual.

38 U.S.C. § 8153 (2009).

In 48 C.F.R. 801.670-3 (2009), the VA Secretary delegated limited procurement authority to designated individuals to acquire by the issuance of individual authorization medical medial services "under $10,000." *Id.* ("When medical, dental, and ancillary services under $10,000 per authorization are not available from an existing contract or agreement, the following VA officials at VA medical facilities may authorize these services . . . .").

## SUMMARY OF ARGUMENT

1.  Plaintiffs cannot meet their burden under the controlling precedent, *Hamlet*, 63 F.3d at 1105 (plaintiff seeking monetary relief under a regulation must establish "(1) the agency was authorized to issue the regulation; (2) the agency conformed to all procedural requirements in promulgating the regulation; (3) the agency intended the regulation to create a binding rule; and (4) the provision does not contravene a statute."), and *Brodowy*, 482 F.3d at 1375 (same), to establish that 38 C.F.R. § 17.56 (2009) constitutes a money-mandating provision entitling them to a money judgment.  As we demonstrate, the VA (1) had no statutory authority to issue the provisions codified at 38 C.F.R. §17.56 (2009) as a money-mandating provision, (2) did not conform with the procedural requirements

4

necessary for issuing the provisions codified at 38 C.F.R. §17.56 (2009) as a money-mandating provision, (3) expressly stated in issuing the provisions codified at 38 C.F.R. §17.56 (2009) that its intent was not to create a binding rule, and (4) could not issue of the provisions codified at 38 C.F.R. §17.56 (2009) as a money-mandating provision consistent with 41 U.S.C. § 3101.[1]

     2.  Plaintiffs' acceptance by performance of VA individual authorizations, which constitute purchase orders, resulted in contracts.  48 C.F.R. §§ 2.101 & 13.004 (FAR); *Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378–79 (Fed. Cir. 2006); Restatement (Second) of Contracts § 45(1) (Option Contract Created by Part Performance or Tender) (1981). Because plaintiffs' acceptance by performance of purchase orders created contracts, plaintiffs' claims are subject to the CDA's requirement that they be submitted to a contracting officer prior to the filing of suit.  41 U.S.C. § 7103.

     3.  Provision of 38 C.F.R. § 17.56 (2009), which expressly addressed the VA's payment for services "authorized under § 17.52," applies solely to those services for veterans eligible for medical services under section 38 C.F.R. § 17.52 (2009), as authorized by 38 U.S.C. §1703, and does not apply to services that the VA procured pursuant to other authority; *e.g.,* 38 U.S.C. § 8153.

     4.  VA individual authorizations issued pursuant to the Secretary's limited delegation of procurement authority, 48 C.F.R. § 801.670-3, authorizations which are expressly limited to the acquisition of "services under $10,000 per authorization," solely entitle plaintiffs to recovery of no more than $10,000 for each individual authorization.

---

[1]  Another judge of this Court in *DaVita, Inc. v. United States*, 110 Fed. Cl. 71 (2013), implicitly rejected this argument and the argument which follows.

## ARGUMENT

### I.      Rules 12(b)(1) And 12(b)(6)

The United States is immune from suit unless it has specifically waived sovereign immunity.  *United States v. Testan*, 424 U.S. 392, 399 (1976).  "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed" and "consent to be sued must be construed strictly in favor of the sovereign and not enlarge[d] . . . beyond what the language requires."  *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992) (citations and internal quotation marks omitted).  A waiver of sovereign immunity cannot be implied but must be "unequivocally expressed."  *E.g., INS v. St. Cyr*, 533 U.S. 289, 299 n.10 (2001) (citations and internal quotations marks omitted).

"[T]he Tucker Act, . . . both confers jurisdiction on the Claims Court and 'waive[s] sovereign immunity for claims premised on other sources of law ( *e.g.,* statutes and contracts).'"  *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1367 (Fed. Cir. 2013) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)); see *United States v. Bormes*, 133 S. Ct. 12, 16–17 (2012).  "A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence."  *M. Maropakis Carpentry Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  If this Court's jurisdiction is challenged based on a challenge to the underlying facts, a plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

In order to establish this Court's jurisdiction under the Tucker Act, plaintiffs must make a "nonfrivolous assertion" that they are "within the class of plaintiffs entitled to recover under the money- mandating source." *Jan's Helicopter Serv. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1307–08 (Fed. Cir. 2008). "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993); *accord Goodrich v. United States*, 434 F.3d 1329, 1332 n.3 (Fed. Cir. 2006) (affirming dismissal for lack of jurisdiction based on document supplied at Federal Circuit's request); *Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

To avoid dismissal for failure to state a claim, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). Any statute or regulation "must be money-mandating as to the class of which plaintiff claims to be a member." *Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (citing *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 291 F.3d 1356, 1361 (Fed. Cir. 2002)); *U.S. Marine*, 722 F.3d at 1373 (citing *Greenlee Cnty. v. United States*, 487 F.3d 871, 876 & n.2 (Fed. Cir. 2007) ("[W]hether the plaintiff[s are] among those who may recover upon proof of the asserted wrong is part of the jurisdictional inquiry for the Tucker Act: there is no jurisdiction unless the plaintiff is among such persons.")).

**II.     A Comprehensive Statutory And Regulatory Scheme Governs The VA's Purchases Of Non-VA Medical Services ForVeterans**

A comprehensive statutory and regulatory scheme generally governs agencies' acquisition of all goods and services and, for that reason, governs the VA's acquisition of non-VA medical services for veterans at issue here.

The provisions of 41 U.S.C. §§ 3101-4712 mandate that the VA comply with the applicable Federal procurement statutes and regulations in purchasing and contracting for acquisition of medical services for veterans. Section 3101 provides that "[a]n executive agency shall make purchases and contracts for . . .  services in accordance with" the Federal acquisition statutes, 41 U.S.C. §§ 3101–4712, and implementing regulations. Consistent with the mandate of section 3103, sections 3101–4712 thus apply generally to all purchases and contracts by executive agencies in the absence of a specific statutory exclusion.  *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 618 n.19 (1980) (provisions apply "to contracts negotiated by executive agencies") (citing S. Rep. No. 89-274 (1965)) (other citations omitted); *Yosemite Park & Curry Co. v. United States*, 582 F.2d 552, 558, 559 (Ct. Cl. 1978) (same); *MFM Lamey Group, LLC*, B- 402377 at 4, 2010 CPD ¶ 81 (Comp. Gen. March 25, 2010) ("Executive agencies must make purchases and contracts for property and services in accordance with the provisions of the CICA and the FAR, except when the act is made inapplicable pursuant to another law.") (citing 41 U.S.C. § 252(a) (2010) (recodified at 41 U.S.C. §§ 3101, –04, –06)).

Section 3102 provides that "[e]xcept to the extent prohibited by another law, the head of an executive agency may delegate to another officer or official of that agency any power under this division," including procurement powers.  41 U.S.C. § 3102(a) & (b).

Section 3102 reflects a comprehensive effort to standardize substantially all Federal procurement of goods and services.  Soon after World War II, Congress enacted the Armed Services Procurement Act of 1947, Pub. L. No. 80-413, 62 Stat. 21, as a "comprehensive revision and restatement of the laws governing the procurement of supplies and services by the War and Navy Departments."  S. Rep. No. 80-571, at 2 (1947).  Two years later, Congress substantially revised the statutory authority for civilian agency procurement by enacting a parallel scheme for non-military procurement, the Federal Property and Administrative Services Act of 1949, Pub. L. No. 81-152, 63 Stat. 377, which "follow[ed] in structure," and generally was "identical in language with, the Armed Services Procurement Act."  H.R. Rep. No. 81-670, at 20 (1949).  Regulations implementing the Federal Property and Administrative Services Act of 1949 specifically defined "contract" to include contracts that formed on the acceptance of agencies' purchase orders by suppliers' tender of performance, as follows:

> "Contract" means establishment of a binding legal relation basically obligating the seller to furnish . . . nonpersonal services . . . and the buyer to pay therefor. In addition to a two signature document, it [includes] . . . orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance.

41 C.F.R. § 1-1.208 (1965) (emphasis added).

### III.   The Appropriations Clause Requires Specific Congressional Authorization For Any Disbursements From The Treasury Based On Plaintiffs' Theory That 38 C.F.R. § 17.56 (2009) Mandates Compensation

Specific congressional authorization for the VA to obligate the United States as plaintiffs allege is necessary because the Constitution provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. Art. I, § 9, cl. 7.

The Appropriations Clause conveys a "straightforward and explicit command 'that no money 'can be paid out of the Treasury unless it has been appropriated by an act of Congress.'" *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). An "appropriation" is simply a license from Congress "to incur obligations and to make payments from [the] Treasury for specified purposes." 1 U.S. Gov't Accountability Office, Principles of Federal Appropriations Law 2-5 (3d ed. 2004) (Red Book); *see also Andrus v. Sierra Club*, 442 U.S. 347, 359 n.18 (1979). By reserving to Congress the right to approve or prohibit the payment of money from the Treasury, the Appropriations Clause serves the "fundamental and comprehensive purpose" of assuring "that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *OPM v. Richmond,* 496 U.S. at 427-428. Congress' constitutional authority to prescribe limitations on the use of public money in the Treasury — and its corresponding accountability to the public for its exercise of that authority — is an essential feature of the Constitution's separation of powers. The Appropriations Clause promotes the rule of law and "prevent[s] fraud and corruption" by limiting the ability of Executive Branch officials to commit the Federal Government to endeavors Congress has not approved. *OPM v. Richmond*, 496 U.S. at 427; see *Cincinnati Soap Co.*, 301 U.S. at 321 (Appropriations Clause "was intended as a restriction upon the disbursing authority of the Executive department"); *Reeside v. Walker*, 52 U.S. 272, 291 (1850) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of anything not . . . previously sanctioned. Any other course would give to the

fiscal officers a most dangerous discretion."); 3 Joseph Story, Commentaries on the Constitution of the United States § 1342, at 213–214 (1833) (but for the Appropriations Clause, "the Executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure").

Plainly, any improvident action by the VA not acting in accordance with statute and lawful regulation cannot constitute a basis upon which to disburse appropriated funds.  *Iacono v. Office of Pers. Mgmt.*, 974 F.2d 1326, 1328 (Fed. Cir. 1992)  ("As the Supreme Court has recently reminded us, the federal courts must 'assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents or the individual pleas of litigants.") (quoting *OPM v. Richmond*, 496 U.S. at 428.).

## IV.    Plaintiffs Cannot Meet Their Burden To Establish That 38 C.F.R. § 17.56 (2009) Constitutes A Money Mandating Provision Independent Of The VA's Contractual Authority

Consistent with the governing statutes, no VA official had any authority to obligate the United States as the result of any VA "non-contractual" acquisition of dialysis services.  The inability of plaintiffs to meet their burden to establish that 38 C.F.R. § 17.56 (2009) constitutes a money mandating provision independent of the VA's contractual authority mandates dismissal of the complaint for lack of jurisdiction.  Both the Supreme Court and the United States Court of Appeals for the Federal Circuit have specifically set forth the burden on a party relying on an agency rule as having the force and effect of law.  The plaintiffs cannot meet this burden and, for that reason, the Court lacks jurisdiction to entertain Count I.

"It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Trauma Serv. Gp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).  As a general proposition, "[i]n order for a regulation to have the force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979).  In so holding, the Court reasoned that "the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes." *Id.* at 303.

In *Hamlet v. United States*, 63 F.3d 1097 (Fed. Cir. 1995), the court specifically considered the question of the burden on a party seeking to recover money on the basis of her contention that an agency directive entitled them to that money.  Citing and relying on *Chrysler Corp. v. Brown*, the Federal Circuit adopted a four part test to determine whether a formally or informally promulgated agency directive has the force and effect of law, as follows:

> [W]e conclude that, regardless of whether a provision of an agency's personnel manual or handbook was published or promulgated under the standards set out in the APA, such provision is a regulation entitled to the force and effect of law if (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute. In determining whether a provision was intended to be binding, the court should consider (a) whether the language of the provision is mandatory or advisory; (b) whether the provision is "substantive" or "interpretive"; (c) the context in which the

12

provision was promulgated; and (d) any other extrinsic
evidence of intent.

*Id.* at 1105; *Brodowy v. United States*, 482 F.3d 1370, 1375 (Fed. Cir. 2007) (plaintiff

seeking relief under a regulation must establish "(1) the agency was authorized to issue

the regulation; (2) the agency conformed to all procedural requirements in promulgating

the regulation; (3) the agency intended the regulation to create a binding rule; and (4) the

provision does not contravene a statute."); *see Chrysler Corp.*, 441 U.S. at 313

("Certainly regulations subject to the APA cannot be afforded the force and effect of law

if not promulgated pursuant to the statutory procedural minimum found in that Act.")

(internal quotations omitted); *Auer v. Robbins*, 519 U.S. 452, 459 (1997) ("A court may

certainly be asked by parties . . . to disregard an agency regulation . . . that appears on the

public record to have been issued in violation of procedural prerequisites, such as the

'notice and comment' requirements of the APA, 5 U.S.C. § 553").

 This Court, of course, must follow the decisions of the United States Supreme

Court in *Chrysler Corp. v. Brown*, and the Federal Circuit in *Hamlet v. United States* and

in *Brodowy v. United States*.  *Rodriguez de Quijas v. Shearson/American Express, Inc.*,

490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case,

yet appears to rest on reasons rejected in some other line of decisions, the Court of

Appeals should follow the case which directly controls, leaving to this Court the

prerogative of overruling its own decisions."); *United States v. Mason*, 412 U.S. 391, 396

(1973) (expressing "difficulty in comprehending how decisions by lower courts can ever

undermine the authority of a decision of [the Supreme] Court."); *Crowley v. United

States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005) ("[T]he Court of Federal Claims may not

13

deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court.  Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.").

### A.     Congress Did Not Authorize The VA To Issue 38 C.F.R. § 17.56 (2009) As A Money-Mandating Provision

Plaintiffs' apparent contention that the VA's acquisition of dialysis service for veterans by the issuance of individual authorizations is not subject to Federal procurement statutes and regulations is unsupported and incorrect.  Congress in 38 U.S.C. §§ 1703(a) and 8153 expressly authorized the VA to acquire non-VA medical services for veterans by contract and agreement, not by the issuance of a money-mandating regulation.  *See, e.g., Edmond v. United States*, 520 U.S. 651, 657 (1997) (where tension exists between a specific statute and a more general statute, the specific statute governs).

### B.     The VA Never Intended That The Provisions of 38 C.F.R. § 17.56 (2009) Reverse The VA's Longstanding Policy And Mandated Compensation

An examination of the VA regulations and manual provisions effective prior to the 2005 change and the relevant Federal Register notes conclusively establishes that the VA never intended that the provisions originally codified at 38 C.F.R. § 17.56 (2005), on which plaintiffs now rely, reverse the VA's longstanding policy to acquire non-VA medical services by contract and to compensate providers in accordance with the Centers for Medicare and Medicaid Services' (CMS) various fee schedules.  Plaintiffs' overly literal reading of the 2005 change represents a scrivener's error and is directly contrary to policy makers' and drafters' clearly expressed intent.

Prior to the 2005 change to section 17.56, the VA published various regulations and manual provisions consistent with its express statutory authority in sections 1703 and 8153 acquire non-VA services by contract. VA Manual, M-1, Part I, Medical Administration Activities (1982), Chapter 15, ¶ 15.37, Payments for Feebasis And/or Contract Hemo- dialysis Services, promulgated the VA's longstanding policy for the payment for non-VA dialysis services. "Payments for any fee-basis services are made according to established fee schedules . . . reflecting prevailing rates charged to the general public for the same services." *Id.* The VA noted that "[s]ince 90 percent of all dialysis patients in the country are Medicare beneficiaries, the Medicare rate must be considered the usual and customary charge to the public in the community for similar services." *Id.*

In 1998, the VA proposed in the Federal Register the issuance of new regulations addressing the VA's compensation for non-VA physician services. The VA stated its intention for non-VA physician services to "establish reimbursement consistency among federal health benefits programs… [to] ensure that amounts paid to physicians better represent the relative resource inputs used to furnish a service, and… [to] achieve program cost reductions." See Summary, Payment for Non-VA Physician Services Associated with Either Outpatient or Inpatient Care Provided at Non-VA Facilities, 62 Fed. Reg. 39,197 (July 22, 1997). In 1998, the VA adopted regulations providing that compensation for non-VA physician services "shall be the lesser of the amount billed or the amount calculated using the . . . Medicare [] participating physician fee schedule for the period in which the service is provided." 63 Fed. Reg. 39,514-01 (July 23, 1998). *See* 42 C.F.R. Parts 414 and 415. The regulation further provided that

15

> [i]f no amount has been calculated under Medicare's
> participating physician fee schedule. . . , payment for such
> non-VA physician services associated with outpatient and
> inpatient care . . . shall be the lesser of the actual amount
> billed or the amount calculated using the 75th percentile
> methodology set forth in . . . this section . . . or the usual
> and customary rate if there are fewer than 8 treatment
> occurrences for a procedure during the previous fiscal year.

*Id.* In subsection b, the regulation discussed in detail the methodology of calculation of

the Medicare physician fee schedule. *Id.*

In 2000, the VA amended 38 C.F.R. § 17.56 (1999) to provide for lower pay-

ments based on negotiated contracts. 65 Fed. Reg. 66,636-02 (Nov. 7, 2000).  The VA

stated that the provision "amends our medical regulations concerning VA payment for

non-VA physician services that are associated with either outpatient or inpatient care

provided to eligible VA beneficiaries at non-VA facilities." *Id.*  The VA noted that

"[w]ith certain exceptions, these payments have been based on Medicare methodology."

*Id.*  In 2003, the VA proposed to amend 38 C.F.R. § 17.56 to address its procurement of

medical services for veterans in Alaska.  68 Fed. Reg. 44,507-01 (July 29, 2003).  In

2005, the VA subsequently published a final regulatory change to 38 C.F.R. § 17.56

addressing medical service in Alaska, as it had proposed to do. 70 Fed. Reg. 5,926-01

(February 4, 2005).

In this same action, the VA further amended 38 C.F.R. § 17.56 (1999) and

published the provisions which plaintiffs contend entitles them to relief.  The 2005

change to 38 C.F.R. § 17.56, published without prior notice and public comment,

changed section 17.56 as follows: whereas the section had previously addressed "non-VA

physician services," it now addressed "non-VA health care professional services

associated with outpatient and inpatient care."  The Federal Register notice explained that

"the rule applies to all non-VA physician and other health care professional services associated with outpatient or inpatient care provided at non-VA facilities;" "[i]n order to reconcile the terminology used in this rule with common practice in VA, . . . the phrase 'non-VA physician' [was] replaced with 'non-VA health care professional services.'" 70 Fed. Reg. 5,926-01.  The VA drafters in the Federal Register characterized these provisions as "technical changes of a non-substantive nature."  *Id*.  Of course, as reflected in Manual M-1, the VA's longstanding published policy when acquiring non-VA medical services prior to 2005 was to limit compensation to the Medicare rates or, stated more broadly, to compensate providers for non-VA medical services at the rates most favorable to the Government.  By expanding the scope of section 17.56 as originally drafted to include other non-physician health care professional services and not just physician services, the VA attempted to reflect the agency's policy and practice to pay for these services at the Medicare rates.  As we demonstrate below, the 2005 change to the regulation, read as plaintiffs now suggest, actually would change the VA's longstanding policy regarding compensation significantly.

The 2005 change to section 17.56 as published in the Federal Register and Code of Federal Regulations provided in pertinent part, as follows:  "[P]ayment for non-VA health care professional services associated with outpatient and inpatient care provided at non-VA facilities . . . shall be the lesser of the amount billed or the amount calculated using the formula developed by the Centers for Medicare and Medicaid Services' (CMS) participating physician fee schedule . . . ."  38 C.F.R. § 17.56 (2005).  The 2005 change specifically addressed instances in which there was no Medicare calculation as a part of the physician fee schedule, as follows:

> If no amount has been calculated under Center for
> Medicare and Medicaid Services' participating physician
> fee schedule . . ., payment for such non-VA health care
> professional services associated with outpatient and
> inpatient care provided at non-VA facilities authorized
> under § 17.52, or made under § 17.120 of this part, shall
> bethe lesser of the actual amount billed or the amount
> calculated using the 75th percentile methodology. . . .

*Id.*

Nothing in the Federal Register suggests that the VA drafters of the "technical"
and "non-substantive" 2005 change to section 17.56 either intended or even appreciated
that "non-VA health care professional services associated with outpatient and inpatient
care" for services that the VA might acquire, including dialysis services, frequently could
not be "calculated using the formula developed by the Centers for Medicare and Medi-
caid Services' (CMS) participating physician fee schedule (emphasis added)," but rather
only by other Medicare fee schedules for the particular services at issue.  Certain
physician services are calculated under the Medicare participating physician fee schedule,
including certain physician services relating to dialysis; however, non-physician services
for dialysis services, commonly identified and billed to Medicare as facility charges,
typically are addressed in other Medicare fee schedules and not the "participating
physician fee schedule," referenced in 38 C.F.R. § 17.56 (2005).  *See* 42 C.F.R.
§ 413.171 & 310.  Thus, although the VA drafters in 2005 altered the scope of section
17.56 to include non-physician health care professional services, the drafters failed to
concurrently alter that part of section 17.56 setting forth the payment calculation based on
the Medicare physician fee schedule, thereby arguably excluding the consideration of
other Medicare schedules in computing entitlement for services in accordance with
section 17.56.

Plaintiffs' overly literal reading of the 2005 change thus leads to an obviously unintended and absurd result:  the VA would pay for those "non-VA health care professional services" not on the "participating physician fee schedule," without any regard to the published Medicare rates in other Medicare schedules for those same services, contrary to the VA's longstanding policy, reflected both in Manual M-1 and in the authorization for services themselves, pursuant to 48 C.F.R. §§ 801.670-3, using the forms set forth at 48 C.F.R. § 853.213.  Thus, whereas previously the 75th percentile methodology applied to those limited types of physician services not covered by Medicare, plaintiffs read the revised regulation to expand the section 17.56 payment methodology to all manner of non-VA outpatient and inpatient care, not just physician services, even for medical services like dialysis, which is plainly covered by other Medicare fee schedules.  However, VA Federal Register entries prior to 2005 clearly reflect that the VA drafters' intention in publishing 17.56 was that the VA's compensation for medical services would be consistent with other Federal programs and would not exceed the Medicare compensation rates.  Plaintiffs' misinterpretation of the 2005 change thus leads to a result directly contrary to the drafters' expressed intent.

C.      **The VA In Issuing 38 C.F.R. § 17.56 (2005) Logically Did Not Comply With 41 U.S.C. § 418(b)(2005)**

Plaintiffs' apparent contentions that 38 C.F.R. § 17.56 (2005) is a non-contractual, money-mandating provision and that 41 U.S.C. § 418b (2005) (recodified at 41 U.S.C. § 1707) did not require notice and the opportunity for public comment reflects an inherent contradiction.  Any change by the VA to 38 C.F.R. § 17.56 that might otherwise have entitled plaintiffs to non-contractual compensation necessarily would be the type of

substantive change for which section 418b expressly required prior notice and the opportunity for public comment.

Because the changes were "technical changes of a non-substantive nature," 70 Fed. Reg. 5,926, the VA drafters in 2005 amended section 17.56 without notice and without the opportunity for public comment to address the VA's then existing practice of acquiring non-VA medical services in addition to physician services.  According to the drafters, "[i]n order to reconcile the terminology used in this rule with common practice in VA, the phrase 'non-VA physician' [was] replaced with ''non-VA health care professional services.'"  *Id.*  The drafters' citation to section 1703 establishes their understanding that the VA's acquisition of all services pursuant to 17.56 was by contract.

According to plaintiffs, provisions of 38 C.F.R. § 17.56 (2009), published expressly as "technical changes of a non-substantive nature," 70 Fed. Reg. 5,926, and not subject to any requirement for notice and comment for that reason, (1) changed the VA's existing published policy in Manual M-1 to pay no more than the published Medicare rates for such medical services, and (2) now entitle plaintiffs to compensation for medical services without regard to the Medicare rate for the services.  Read in this manner, the 2005 change alters the VA's longstanding policy promulgated in Manual M-1, and reaches exactly the opposite expressed intent both of the underlying 1989 regulation and of the 2005 change.  The reading of the provisions of 38 C.F.R. § 17.56 (2009) on which plaintiffs now rely clearly constitutes a substantive change to a procurement regulation for which Congress in section 418b expressly required notice and the opportunity for public comment prior to the provisions taking effect.  41 U.S.C. § 418b (2005) (no

provisions "may take effect until 60 days after the procurement policy, regulation, procedure, or form is published for public comment in the Federal Register").

The VA, not interpreting the provisions originally codified at 38 C.F.R. § 17.56 (2005) as a substantive change, had no reason to comply with the procedures of 41 U.S.C. § 418b (2005). Because of the requirement of section 418b (now section 1707), the 2005 change is void as a money mandating provision to the extent that it may be read as a procurement regulation entitling plaintiffs to compensation. *Navajo Refining Co., L.P., v. United States*, 58 Fed. Cl. 200, 215 (2003).

In 2005, section 418b addressed the issuance of any "procurement policy, regulation, [or] procedure, . . . relating to the expenditure of appropriated funds that has . . . a significant effect beyond the internal operating procedures of the agency issuing the procurement policy, regulation, procedure or form." 41 U.S.C. § 418b (2005). The VA in 2005 had statutory authority pursuant to 38 U.S.C. § 1703 to acquire dialysis services pursuant to contract, and relied on and expressly cited that contractual authority in issuing 38 C.F.R. § 17.56 (2005). As interpreted by plaintiffs, the provisions codified at 38 C.F.R. § 17.56 (2005) entitles them to compensation and therefore necessarily both "relat[es] to the expenditure of appropriated funds" and has "a significant effect beyond the internal operating procedures of the agency issuing the procurement policy, regulation, procedure or form." As this Court has previously held, procurement rules subject to the requirement of 41 U.S.C. § 418b (2005) for notice and the opportunity for public comment and issued without such notice and such opportunity are, consistent with a literal reading of the statute, ineffective and void. *Navajo Refining Co., L.P.*, 58 Fed. Cl. at 205 (citing and following *La Gloria Oil and Gas Co. v. United States*, 56 Fed. Cl.

211, 220-22 (2003)); *accord United States v. Amdahl Corp.*, 786 F.2d 387, 392 (Fed. Cir. 1986) (procurement contract award in conflict with statute and regulation was void *ab initio*).  *See also Military Order of the Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293, 1296 (Fed. Cir. 2009) (holding that a new procedure for processing large claims was a substantive rule and therefore invalid because it was contrary to existing regulations and was not implemented through APA notice and comment rule making); *see Alaniz v. OPM*, 728 F.2d 1460, 1469 (Fed. Cir. 1984) (stating a district court's holding with approval that "it is a well-established rule that administrative rules found to be in violation of the notice and comment requirements of the APA are void and ineffective.") (citations omitted).

> **D.     Plaintiffs' Interpretation Of 38 C.F.R. § 17.56 (2005) As A Non-contractual, Money-Mandating Provision Authorizing The VA To Acquire Non-VA Medical Services By The Issuance Of Individual Authorizations Not Subject To Federal Procurement Statutes And Regulations Conflicts With 41 U.S.C. § 3101**

In 41 U.S.C. § 3101, Congress has provided that "[i]n General, . . .. , [a]n executive agency shall make purchases and contracts for . . . services in accordance with" the Federal acquisition statutes and regulations.  Plaintiffs' reading of 38 C.F.R. § 17.56 (2009) as a money-mandating provision independent of the VA's contractual authority and, therefore subject to general procurement statutes, the FAR, and the VA Acquisition Regulations (VAAR), conflicts with the express Congressional mandate of 41 U.S.C. §  3101.  Congress has not granted the VA any authority to acquire non-VA medical services in a manner not subject to and inconsistent with the governing Federal procurement statutes and regulations.

**IV.    The Court Should Dismiss All The Dialysis Centers' Claims For Services Provided To Veterans Not Eligible Services In Accordance With 38 U.S.C. § 1703 and 38 C.F.R.§ 17.52 (2009).**

Should the Court reach the issue, based on our very preliminary inquiry, a substantial portion of the payments to plaintiffs during the relevant period claims are based on dialysis services provided to veterans not eligible for services in accordance with the provisions of 38 U.S.C. § 1703 and 38 C.F.R.§ 17.52.  Although 38 U.S.C. § 8153 provides separate statutory authority for the VA's acquisition of medical services for veterans not within the scope of these provisions, 38 C.F.R.§ 17.56 (2009) solely addresses the pricing for services authorized pursuant to section 17.52; section 17.56 simply has no possible relevance whatsoever to compensation for any services that plaintiffs provided to veterans who were not eligible for services in accordance with 38 U.S.C. § 1703 and 38 C.F.R. § 17.52.

Congress in 38 U.S.C. § 1703 provided the VA limited authority to contract for medical services for specific veterans, and the VA in 38 C.F.R. § 17.52 implemented that specific authority for a specific subset of those veterans eligible for care under section 1703.

Section 17.56 by its own terms solely applies to medical services for veterans authorized to receive care under section 17.52.

Consistent with the literal reading of 17.56 that plaintiffs urge as a basis for relief, section 17.56 has no possible application to veterans not eligible for services in accordance with 38 U.S.C. § 1703 and 38 C.F.R. § 17.52.  The Court should dismiss plaintiffs' claims in Count I to the extent that they seek compensation on the basis of

23

services they provided to veterans not eligible for services under 38 U.S.C. § 1703 and 38 C.F.R.§ 17.52 (2009).

**V.     In The Absence of Plaintiffs' Submission Of Claims To The VA As Required By The CDA, The Court Lacks Jurisdiction to Entertain Plaintiffs' Claims**

**A.     The VA's Acquisition Of Dialysis Services In Accordance With 38 U.S.C. §§ 1703 and 8153, The FAR, And VAAR By The Issuance Of Purchase Orders Results In Contracts**

Consistent with 38 U.S.C. §§ 1703 and 8153, with the applicable Federal Acquisitions Regulation provisions, and with the VAAR, the VA's issuance of individual authorizations for dialysis services constituted purchase orders, and the plaintiffs' acceptance of such purchase orders by performance resulted in contracts.  "If the intent of Congress is clear, that is the end of the matter; for [a] court . . . must give effect to the unambiguously expressed intent of Congress."  *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (footnote omitted); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  "The FAR regulations are the very type of regulations that the Supreme Court in *Chevron* [467 U.S. 837 (1984)] and later cases has held should be afforded deference."  *Brownlee v. DynCorp*, 349 F.3d 1343, 1354 (Fed. Cir. 2003).  In 1969 Congress tasked the Office of Federal Procurement Policy (OFPP) with "establishing a system of coordinated, . . . uniform procurement regulations" for the entire executive branch. 41 U.S.C. § 1121 (codifying Federal Procurement Policy Act, § 6(d)(1), 88 Stat. 796 (1974) (codified as amended at 41 U.S.C. § 1121, Pub. L. No. 93-400).  The OFPP issued the Federal Acquisition Regulation pursuant to this authority.

In 1985, Congress enacted the provisions codified at 38 U.S.C. § 1703 (2005), which provide the VA with authority to contract with non-VA providers for specific medical services for specified veterans.  *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99–272, § 19012, Technical Revision of Authority to Contract for Hospital Care and Medical Services.  Congress enacted section 1703 because it understood that the VA Secretary's authority to enter into agreements and contracts, previously codified at 38 U.S.C. § 213 (1985) and now codified at 38 U.S.C. § 513, did not permit the Secretary to contract for non-VA medical services. S. Rep. No. 99-146, 1986 U.S.C.C.A.N. 42, 535 ("the Administrator's general authority to contract under current section 213 is not available with respect to any of these chapter 17 health-care authorities").

Consistent with its understanding that the VA lacked contracting authority under existing statutes, Congress expressly provided the Secretary new authority in section 1703 to contract for hospital care or medical services for specified veterans subject to specific restrictions and limitations:  "the Secretary, as authorized in section 1710 of this title, may contract with non-Department facilities in order to furnish" medical services. 38 U.S.C. § 1703.  The VA regulation 38 C.F.R. § 17.52 similarly provides that the "VA may contract with non-VA facilities" in specific circumstances for specific services for specifically specified veterans.  *Id.* (emphasis added).

As provided by 48 C.F.R. § 1.301, the VA Secretary issued general VA procurement regulations published at 48 C.F.R. §§ 801–873, which supplement the FAR.  48 C.F.R. § 801.101(b).  The Secretary, in 48 C.F.R. § 801.670, a "[s]pecial and limited delegation," specifically (1) delegated his acquisition authority to procure non-VA

medical services and (2) authorized specific individuals in the VA to issue individuals authorizations to acquire medical services. *Id.* The Secretary delegated his procurement authority "to execute, award and administer a contract, purchase order, or other agreement for the expenditure of funds to acquire the specific services . . . to [the Senior Procurement Executive for] further delega[tion] . . . to employees appointed or designated to the positions specified in those sections." *Id.* In pertinent part, subsection 801.670-3, "Medical, dental, and ancillary services," provides that "the Chief of Staff, and the physician assigned the responsibility for the ambulatory care function, [and] Chief, Medical Administration Service, [(MAS)], or the person designated by the medical center director to perform [MAS] functions," at a Department of Veterans Affairs facility are delegated authority to execute authorizations for medical, dental, and ancillary services under $10,000 per authorization when such services are not available from existing contracts or agreements. 48 C.F.R. § 801.670-3.

In this delegation of his contractual authority, the VA Secretary specified that "forms specified in part 853 of this chapter shall be used for this purpose and when ordering services . . . from existing contracts." *Id.* § 801.670-3(b). In 48 C.F.R. Subpart 13.3, Simplified Acquisition Methods, the VA prescribed VA Form 10–7079, Request for Outpatient Medical Services, for the acquisition of non-VA medical services. *See* 48 C.F.R. § 13.302-5(c) ("[t]he contracting officer or other properly delegated official (see 801.670-3) may" use VA Form 10–7079, Request for Outpatient Medical Services, "when ordering the indicated medical, dental and ancillary services up to $10,000 per authorization when such services are not available under existing contracts").

The OFPP in the FAR specifically defined "contract," substantially consistent with the prior regulation, as follows:

> "Contract" means a mutually binding legal relationship obligating the seller to furnish the supplies or services . . . and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to) . . . orders, including purchase orders, under which the contract becomes effective by written acceptance or performance , . . .   .

48 C.F.R. § 2.101 (1985). Thus, when Congress in 1985 enacted the provisions now codified at section 1703, Congress should be presumed to have both understood and intended that the word "contract" in section 1703 encompassed contracts resulting from the acceptance of purchase orders by performance.  Neither the terms of section 1703 nor the legislative history provide any exception to pre-existing acquisition law or regulation.

In addition, 38 U.S.C. § 8153, addressing the VA's authority to share medical services, authorizes the VA to acquire medical services "by contract or other form of agreement" without any limitation based on the specific status of the veterans.  38 U.S.C. § 8153(a)(1) (2009).  Section 8153 was amended in 1996 to ease restrictions on the types of such agreements that the VA could enter into, authorizing such agreements to be entered into with "any health-care provider" for the mutual use or exchange of health care resources."  Pub. L. No. 104-262, Veterans' Health Care Eligibility Reform Act of 1996, § 301 (1996) ("Revision of Authority to Share Medical Facilities, Equipment, and Information"); *see* S. Rep. No. 104–372 (1966), Veterans' Health Care Eligibility Reform Act Of 1996, at 16, 21-22.  The 1996 amendment expanded the scope of the resources the VA could acquire from "specialized medical resources" to "health care resources."

27

Nothing in any statute or VA regulation suggests that the VA has authority to acquire medical services in a manner other than by contracts subject to Federal procurement regulations and the CDA.  Where Congress has provided the VA authority to procure goods and services in a manner not subject to the CDA, it has done so expressly.  For instance, 38 U.S.C. § 8123, "Procurement of prosthetic appliances," provides that "[t]he Secretary may procure prosthetic appliances and necessary services required in the fitting, supplying, and training and use of prosthetic appliances by purchase, manufacture, contract, or in such other manner as the Secretary may determine to be proper, without regard to any other provision of law."  Similarly, 38 U.S.C. § 1720(c)(1)(A), authorizes the VA's procurement of nursing home services by "provider agreements" in lieu of "by contracts." (Codifying Veterans Health Care Authorities Extension and Improvement Act of 2003, Pub. L. No. 108-170, § 102. ("Enhanced agreement authority for provision of nursing home care and adult day health care in non-Department of Veterans Affairs facilities")).  *See* S. Rep. 108-193 (2003) (discussing the need for this special authority).[2]

_____

[2] As it has done for the VA, where Congress has provided other agencies authority to procure goods and services in a manner not subject to the CDA, it has done so expressly. In 39 U.S.C. § 410(a), for example, Congress specifically exempted the Postal Service from procurement laws absent specified exceptions. *See Anselma Crossing, L.P. v. U.S. Postal Service*, 637 F.3d 238, 244–46 (3d Cir. 2011) ("the CDA does not apply to the Postal Service unless the CDA 'remain[s] in force as rules or regulations of the Postal Service'" and holding the district court had no jurisdiction over a contract dispute between contractor because USPS had included CDA in its procurement regulations (quoting 39 U.S.C. § 410(a)). Congress provided the Federal Aviation Administration (FAA) certain dispute resolution authority, which expressly provided the FAA's Office of Dispute Resolution for Acquisition (ODRA) with exclusive jurisdiction over bid protests and contract disputes. *See* Pub. L. No. 108-176, § 224(b) (codified as amended at 49 U.S.C. § 40110(d)(4)).  *See also* 31 U.S.C. § 5136 (providing that "provisions of law governing procurement or public contracts shall not be applicable to the procurement of goods or services necessary for carrying out [U.S.] Mint programs and operations").

The OFPP in FAR Part 13 also published comprehensive regulations generally governing agencies' acquisitions of goods and services by simplified acquisition procedures, including agencies' issuance of purchase orders, as occurred here.  In section 13.004, the OFPP specifically addressed the legal effect of quotations by suppliers to the Government, of the placement of orders by Federal agencies pursuant to quotations, and of providers' acceptance of purchase orders by their performance.  48 C.F.R. § 13.004, Legal effect of quotations, provides in pertinent part that "[t]he order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions. A contract is established when the supplier accepts the offer."  48 C.F.R. § 13.004(a) (emphasis added).  *Accord Friedman Enterprises, Inc*., ASBCA No. 54886, 05-2 BCA ¶ 32,991 at 163 ("A purchase order such as this PO is an offer by the government to the supplier to buy certain supplies or services upon specified terms and conditions.  A contract is established when the supplier accepts the order, by furnishing the supplies or services ordered or by proceeding with the work to the point of substantial performance prior to the due date. . . .") (citing 48 C.F.R § 13.004).  Section 13.004 thus complements and further confirms the current and longstanding definition of contract in 48 C.F.R. § 2.101 as including agreements formed by the acceptance of purchase orders.

Read together, 38 U.S.C. §§ 1703 and 8153, the FAR, and VAAR compel the conclusion that the VA's acquisition of dialysis services by the issuance of purchase orders resulted in contracts when dialysis providers accepted those purchase orders by their performance.

**B.      The FAR Provisions That Specifically Provided That Acceptance Of Agencies' Purchase Orders By Performance Results In Unilateral Contracts**

The FAR provisions, cited above, specifically providing that acceptance of agencies' purchase orders by performance results in unilateral contracts, 48 C.F.R. §§ 2.101 & 13.004, conform with well-established general principles of contract law, with controlling precedent, with the precedent of both this Court and the board of contracts appeals, and with the policy of establishing consistent rules and precedent for Government procurement.

The general principle of contract law that a unilateral contract may be formed by performance is long standing and well-established.  As set forth in the Restatement of Contracts:  "Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it."  Restatement (Second) of Contracts § 45(1) (1981) (citations omitted).

The accepted general proposition that acceptance by performance results in contracts also conforms both with the controlling precedent in this circuit, *Wesleyan Co*., 454 F.3d at 1378–80 (appellant's acceptance of purchase orders for prototypes of hydration systems by performance resulted in "procurement contracts" subject to CDA), and with the case law of the boards of contracts appeals.  In *Bel Pre Health Care Ctr., Inc. v. United States*, 24 Cl. Ct. 495, 497 (1991) ("VA Form 10–7078—Authorization and Invoice for Medical and Hospital Services is essentially a purchase order for procurement" which "when issued, obligate[s] the Government to pay only for the amount of services requested and performed.")), *aff'd,* 980 F.2d 745 (Fed. Cir. 1992).  In

*Canal 66 P'ship v. United States*, 87 Fed. Cl. 722 (2009), and *Master Research & Mfg*.,

ASBCA No. 46341, 94-2 BCA ¶ 26747, the contractors accepted purchase orders by

performance and then all submitted their contract claims to the contracting officer for

decisions prior to filing suit. *See* Complaint (Sept. 27, 1989), ¶ 7, *Bel Pre Health Care*

*Ctr.*, 24 Cl. Ct. at 497; *Canal 66 P'ship*, 87 Fed. Cl. at 724 ("On December 15, 2006,

Plaintiff filed a claim . . . . On February 20, 2007, [the] Contracting Officer . . . issued a

final decision denying Plaintiff's claim, . . . . Plaintiff filed the instant complaint,

appealing the Contracting Officer's final decision under the Contract Disputes Act. . . .");

*Master Research & Mfg.*, ASBCA No. 46341, 94-2 BCA ¶ 26747 ("Further

correspondence ensued, culminating in a claim by appellant for $11,697.00, which was

denied by the contracting officer and followed by this timely appeal."); a*ccord Klass*

*Eng'g, Inc.* ASBCA No. 22052, 78-2 BCA ¶ 13,236 (recognizing that issuance of a

purchase order "constituted an offer to enter into a unilateral contract," with acceptance

occurring by tender of performance), *modified on reconsid.*, 78-2 BCA ¶ 13,463.  *See*

*also  Miller v. United States*, No. 90 C 1766, 1990 WL 179810, at *1 (N.D. Ill. Nov. 5,

1990) (VA form 10-7079 authorization to acquire non-VA medical services resulted in a

contract for services and, for that reason, the United States was not subject to suit for

negligent acts of the health care provider for which the VA contracted).

     Finally, "[t]he FAR and CDA were intended in part to promote uniformity,

consistency, and fairness across all contracting agencies."  *Sharp Elecs. Corp. v.*

*McHugh*, 707 F.3d 1367, 1373 (Fed. Cir. 2013) (citing *Newport News Shipbuilding &*

*Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1551 (Fed. Cir. 1993)).  Plaintiffs' apparent

contention that the VA's acquisition of dialysis services was not subject to the Federal

procurement statutes and regulations, discussed above, would frustrate that Congressional purpose.

### C.   A Comprehensive Statutory And Regulatory Scheme Governs All Disputes Arising From The VA's Acquisition Of Non-VA Medical Services For Veterans

Complementing the VA's statutory authority to contract for non-VA medical services for veterans, the CDA constitutes a corresponding comprehensive statutory and regulatory scheme that governs the resolution of all disputes arising from all the VA's acquisition of non-VA medical services for veterans, including all contracts formed following the VA's issuance of purchase orders and acceptance of those purchase orders by performance.  "CDA jurisdiction exists when the claim has 'some relationship to the terms or performance of a government contract.'" *Todd Constr., L.P. v. United States,* 656 F.3d 1306, 1314 (Fed. Cir. 2011) (*citing Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)).  *See Sharp Elecs. Corp. v. McHugh*, 707 F.3d 1367 (Fed. Cir. 2013) (discussing the history of Federal Government contract dispute resolution).

The CDA "[u]nless otherwise specifically provided . . . , applies to any express or implied contract . . . made by an executive agency for— . . .  (2) the procurement of services; . . . . " 41 U.S.C. § 7102(a).  "[T]he evident purpose of Congress when it enacted the [CDA] . . . [was] to centralize the adjudication of government contract disputes" in the contracting officer, the board and the Claims Court.  *McDonnell Douglas Corp. v. United States*, 754 F.2d 365, 371 (Fed. Cir. 1985).

When Congress enacted the CDA in 1978, Federal procurement regulations governing executive agency purchases of services by the issuance of purchase orders, 41 C.F.R. § 1-1.208 (1978), cited above, specifically provided that acceptance of a purchase

order by performance resulted in a contract.  Thus, although the CDA itself does not explicitly define the phrase "contract . . . for . . .  procurement," Congress should be presumed both to have understood and to have adopted the then-established regulatory definition of "contract" in Federal procurement law:  all contracts for the procurement of property or services by the Federal Government through the expenditure of Government funds, including contracts formed by the acceptance by performance of purchase orders. "[A] legislative body generally uses a particular word with a consistent meaning in a given context" and it is generally presumed that "whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." *Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972); *cf. Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 613 (1992).  Because these laws were enacted in the space of only a few years, as part of a systematic effort at procurement reform, the strong presumption is that Congress intended that the word "contract" be consistently interpreted in Federal procurement generally and in dispute resolution in Federal procurement specifically.  *Cf. Erlenbaugh,* 409 U.S. at 244 (application of the rule of *in pari materia* "certainly makes the most sense when the statutes were enacted by the same legislative body at the same time").

Even assuming solely for the sake of argument that the language of CDA standing alone was somehow ambiguous as to whether it governs contracts resulting from acceptance by performance of agency purchases orders, implementing FAR regulations now confirm that the CDA applies to contracts resulting from acceptance by performance of agency purchases orders.  As discussed, the FAR definition of contract, 48 C.F.R. § 2.101 now defines "contract" to include "orders, including purchase orders, under

which the contract becomes effective by written acceptance or performance."  When determining the meaning of undefined terms in the CDA, courts consistently have "look[ed] for guidance to its implementing regulations," the FAR.  *DynCorp*, 349 F.3d at 1354 ("The FAR regulations are the very type of regulations that the Supreme Court in Chevron and later cases has held should be afforded deference."); *Essex Electro Eng'rs, Inc. v. United States*, 960 F.2d 1576, 1577, 1580-1581 (Fed. Cir. 1992); *accord H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564 (Fed. Cir. 1995); *see generally Reflectone v. Dalton*, 60 F.3d 1572, 1579 n.11 (Fed. Cir. 1995) (the OFPP "ha[s] authority to issue regulations implementing the CDA").

For all these reasons, as a matter of law, the dialysis centers' acceptance by performance of VA purchase orders resulted in "contracts" subject to the CDA.  In 38 U.S.C. §§ 1703 and 8153, Congress granted the VA Secretary statutory authority to contract for medical services.  Pursuant to that express authority, the VA Secretary in 48 C.F.R. § 801.670-3 has delegated that contractual authority, subject both to an express limitation of $10,000 for each individual authorization, 38 C.F.R. § 17.52, and the use of forms for such purchase transactions, 48 C.F.R. § 813.307(c).

Having been granted discretionary authority in sections 1703 and 8153 specifi-cally to "contract," the VA had no authority to proceed to acquire services in another manner.  The rulemaking power granted to an administrative agency is "'. . . the power to adopt regulations to carry into effect the will of Congress as expressed by the statute'"). *Dixon v. United States*, 381 U.S. 68, 74 (1965) (quoting *Manhattan Gen. Equip. Co. v. Comm'r of IRS*, 297 U.S. 129, 134, (1936)).  "A regulation which . . . operates to create a rule out of harmony with the statute . . . is a mere nullity." 297 U.S. at 134.

The individual authorizations issued in accordance with VAAR, 48 C.F.R.

Subpart 813.3, Simplified Acquisitions, 48 C.F.R. 813.307, Forms,

pursuant to 38 U.S.C. §§ 1703 and 8153 and 48 C.F.R. § 801.670-3 are purchase orders,

offers by the Government, which, when accepted by performance by plaintiffs, creates

unilateral contracts subject to the CDA.

### E.     The CDA By Its Express Terms Withdraws Any Waiver of Sovereign Immunity Pursuant To 1491(a)(1)

The CDA in 41 U.S.C. § 7103(a)(1)–(2) expressly requires that "[e]ach claim by a

contractor against the Federal Government relating to a contract shall be in writing," and

"shall be submitted to the contracting officer for a decision."  Because the dialysis

centers' acceptance of VA purchase orders by performance resulted in contracts, in the

absence of plaintiffs' submission of proper claims and a contracting officer's final

decision on such claims, this Court now lacks jurisdiction to entertain plaintiffs' claims.

"[F]or the Court of Federal Claims to have jurisdiction under the CDA, the contractor

must submit a proper claim—a written demand that includes (1) adequate notice of the

basis and amount of a claim and (2) a request for a final decision. In addition, the

contractor must have received the contracting officer's final decision on that claim."

*M. Maropakis Carpentry v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (citing

*James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996));

*Reflectone, Inc.*, 60 F.3d at 1575 ("Under the CDA, a final decision by a CO on a 'claim'

is a prerequisite for Board jurisdiction.").  The complaint contains no allegation that

plaintiffs ever submitted any claim raising the issues in Count I to any VA contracting

officer as section 7103 expressly requires and, for that reason, the Court now lacks

jurisdiction to entertain Count I.

**F.    The CDA By Implication Withdraws Any Waiver of Sovereign Immunity Pursuant To 28 U.S.C. § 1491(a)(1)**

Even in the absence of the express requirement of subsection 7103(a), the FPPA and CDA bar the Court's exercise of jurisdiction under 28 U.S.C. § 1491(a)(1) to entertain Count I in the absence of plaintiffs' compliance with the CDA.  The existence of a comprehensive statutory scheme addressing Federal procurement generally and dispute resolution specifically repeals by implication any jurisdiction that might otherwise permit the Court to entertain Count I under 28 U.S.C. § 1491(a)(1).  *United States v. Bormes*, 133 S. Ct. 12, 17 (2012) (where "a statute contains its own self- executing remedial scheme," a court "look[s] only to that statute").  *Accord Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) (comprehensive remedial scheme that withdraws Tucker Act jurisdiction over a takings claim).  As the Court explained:

> The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute. Because a precisely drawn, detailed statute pre-empts more general remedies, FCRA's self-executing remedial scheme supersedes the gap-filling role of the Tucker Act.

*Bormes*, 133 S. Ct. at 18 (internal quotation marks and citations omitted).

Congress' creation of a comprehensive statutory scheme for dispute resolution repeals by implication any waiver of sovereign immunity and jurisdiction under section 1491(a)(1) that this Court might otherwise have had.  For instance, in *Brown v. General Servs. Admin.,* 425 U.S. 820 (1976), the Court held that a plaintiff could not bring an

action under the Little Tucker Act alleging employment discrimination by a Federal agency. *Id.* at 834.  The Court relied in part on legislative history indicating congressional intent that Title VII supply the only remedy, but also stressed the "balance, completeness, and structural integrity" of the Title VII remedy, and the principle that "a precisely drawn, detailed statute pre-empts more general remedies."  *Id.* at 828-834.

This same principle applies whether the existing remedial scheme actually provides a remedy for the type of claim the plaintiff asserts.  In *United States v. Erika, Inc.*, 456 U.S. 201 (1982), for example, the Court declined to recognize Tucker Act jurisdiction to consider a remedy for a dispute concerning reimbursement for dialysis services under the Medicare Act.  *Id.* at 208.  The Court observed that the judicial review provisions in the Medicare Act itself did not authorize the sort of judicial action the plaintiff had tried to bring under the Tucker Act, and reasoned that "[i]n the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims."  *Id.*

Because a comprehensive statutory and regulatory scheme governs both Federal acquisitions generally, and the resolution of disputes as the result of such acquisitions specifically, this Court lacks jurisdiction under section 1491(a)(1) to entertain Count I in the absence of plaintiffs' submission of proper CDA claims to the contracting officer.

## V.     The Court Should Dismiss All The Dialysis Centers' Claims That Seek More Than $10,000

Should the Court reach the issue, the Court should dismiss all plaintiffs' claims, seeking payment of more than $10,000 on the basis of individual authorizations because plaintiffs have not and cannot demonstrate the existence of a money-mandating provision entitling plaintiffs to that compensation.

In 48 C.F.R. 801.670-3 (2009), the VA Secretary delegated limited procurement authority to designated individuals to acquire by the issuance of individual authorization medical medial services "under $10,000." *Id.* ("When medical, dental, and ancillary services under $10,000 per authorization are not available from an existing contract or agreement, the following VA officials at VA medical facilities may authorize these services . . . .").

Publication of section 801.670 in the Federal Register and in the Code of Federal Regulations provided plaintiffs "notice of the contents of the document." 44 U.S.C. § 1507; *Fed. Crop Ins. Co. v. Merrill*, 332 U.S. 380, 384 (1947). Plaintiffs "entering into an arrangement with the Government," assumed the "the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* at 384. Moreover, limitations on the scope of authority must be recognized even though the governmental official may have been unaware of such constraints. *See id.* (citing *United States v. Stewart,* 311 U.S. 60, 70, (1940); *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, (1917)).

Here, plaintiffs had actual notice that VA officials who issued individual authorizations for medical services had no authority in issuing individual authorizations to obligate the United States to pay an amount in excess of $10,000. Plaintiffs plainly cannot meet their burden to demonstrate such authority. Accordingly, the Court should dismiss all plaintiffs' claims that seek such relief.

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss the complaint for lack of jurisdiction or, in the alterative, specific claims as set forth above.

Respectfully submitted,

STUARY F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

Of Counsel                                    /s/ John S. Groat
Dennis Foley                                  JOHN S. GROAT
Drew Cornacchio                               Trial Attorney
Office Of General Counsel (025)               Phyllis Jo Baunach
Department of Veterans Affairs                Senior Trial Counsel

                                              Commercial Litigation Branch
                                              Civil Division
                                              Department of Justice
                                              Attn: Classification Unit
                                              P.O. Box 480
                                              Ben Franklin Station
                                              Washington, D.C. 20005
                                              Tel:  (202) 616-8260
                                              Fax:  (202) 514-7965
                                              jack.groat@usdoj.gov

May 5, 2014                                   Attorneys for Defendant